**Joseph K. BAGDONAS, Plaintiff,**

v.

**UNITED STATES of America, DEPARTMENT OF the TREASURY, BUREAU OF ALCOHOL, TOBACCO AND FIREARMS, Defendant.**

**No. 94 C 2356.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 13, 1995.

Joseph K. Bagdonas, Des Plaines, IL, pro se.

Jack Donatelli, U.S. Attys. Office, Chicago, IL, for defendant Dept. of the Treasury, U.S. Government, Bureau of Alcohol, Tobacco and Firearms.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Joseph K. Bagdonas ("Bagdonas") alleges that the Bureau of Alcohol, Tobacco and Firearms ("ATF") acted in an arbitrary and capricious manner when it denied federal firearms disabilities relief to Bagdonas. Currently before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, Bagdonas' motion for summary judgment is denied and the ATF's motion for summary judgment is granted.

## FACTS

The facts which follow are both material and undisputed. Bagdonas was convicted in the U.S. District Court, Northern District of Ohio, for violation of the National Firearms Act, 26 U.S.C. § 5861, on June 13, 1979, and was sentenced to a term of 5 years with 30 days incarceration and the remainder on probation. *See* Def.'s Rule 12(m) Statement at ¶ 1. Bagdonas' felony conviction arose from his illegal possession and transfer of an unregistered firearm (silencer). *Id.* Bagdonas was subjected to a federal firearms disability, pursuant to the Gun Control Act of 1968, 18 U.S.C. § 922(g), due to this felony conviction. *Id.* at ¶ 2.

Bagdonas subsequently sought relief for the federal firearms disability from ATF. *Id.* at ¶ 3. After Bagdonas obtained relief from the Illinois State Police for the firearms disability, the ATF completed its investigation into the circumstances of Bagdonas' conviction and his record and reputation. *Id.* at ¶ 4–8. As a part of its investigation, the ATF conducted interviews with Bagdonas, the persons Bagdonas had listed as character references, members of the community where Bagdonas lived, and his current and former employers. *Id.* at ¶ 9. The ATF also checked Bagdonas' military and law enforcement records and interviewed his parole officers. *Id.*

The ATF's investigation revealed that Bagdonas had been discharged from the army due to his mental condition after he had served less than 180 days of active duty. *See id.* at ¶ 11(a); Pl.'s Rule 12(n) Statement at ¶ 11(a). It was also revealed that Bagdonas had been arrested and charged with improper handling of a firearm on April 22, 1977. In this incident, Bagdonas was stopped for a traffic violation by a police officer who noticed a loaded .45 caliber pistol in the case in which Bagdonas carried his wallet. *See* Def.'s Rule 12(m) Statement at

¶ 11(b). Investigation into the circumstances surrounding Bagdonas' 1979 federal conviction showed that Bagdonas had manufactured silencers from lawn mower mufflers and had been involved in sales of machine guns and silencers. During the course of one such sale, an associate of Bagdonas pointed a machine gun at an undercover ATF agent to "cover" Bagdonas. *Id.* at ¶ 11(c). ATF's investigation included interviews with a neighbor who expressed a fear of Bagdonas and concern over the restoration of firearm privileges to Bagdonas. *Id.* at ¶ 11(d). A former employer of Bagdonas also opposed the restoration of firearm privileges to Bagdonas. *Id.*

After concluding its investigation, the ATF reached a determination that the statutory requirements regarding public safety and public interest for restoring Bagdonas' federal firearms privileges had not been satisfied and it, therefore, denied Bagdonas' application for relief on September 27, 1988. *Id.* at ¶ 10. On October 10, 1988, Bagdonas appealed the denial of his application to the Director of the ATF. *Id.* at ¶ 12. After reviewing Bagdonas' file the ATF concluded that the denial of relief was fully supported. *Id.* at ¶ 13. The ATF also informed Bagdonas that he could reapply for restoration of his firearm privileges two years from September 27, 1988, the date of the original denial letter. *Id.* Bagdonas requested reconsideration of his application by letter dated August 30, 1993. *Id.* at ¶ 16. The ATF informed Bagdonas by letter dated November 4, 1993, that sufficient reasons existed in 1988 to deny him relief. *Id.* at ¶ 17. The ATF's November 4th letter also informed Bagdonas that a reapplication for relief would not now be considered because Congress had imposed budgetary restrictions upon the ATF which precluded the ATF from investigating and acting upon firearms relief applications. *Id.* at ¶ 14 and 18. On May 3, 1994, Bagdonas filed this action, seeking judicial review of the ATF's denial of his application for relief of the federal firearm disability.

## DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is only proper when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265. A genuine issue of material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making its determination "[t]he court must view all evidence in the light most favorable to the party opposing the motion for summary judgment," *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir.1990), and draw all reasonable inferences in the nonmovant's favor. *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.) *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). However, "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.,* 477 U.S. at 323–27, 106 S.Ct. at 2552–55. Thus, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Flip Side Productions, Inc. v. Jam Productions, Ltd.,* 843 F.2d 1024, 1032 (7th Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). Mere conclusory assertions, unsupported by specific facts, made in depositions or affidavits opposing a motion for summary judgment, are not sufficient to defeat a proper motion for summary judgment. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990); *see also Jones v. Merchants Nat'l Bank & Trust Co.,* 42 F.3d 1054, 1058 (7th Cir.1994) ("Self-serving assertions without factual support in the record will not defeat a motion for summary judgment.") Additionally, disputed facts become material only when they have the ability to affect the outcome of the suit. *First Indiana Bank v. Baker,* 957 F.2d 506, 508 (7th Cir.1992) quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The sole function of the court's deliberations is to determine whether sufficient evidence exists to support a verdict in the

nonmovant's favor. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge when deciding a motion for summary judgment. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## B. *Federal Firearms Disabilities*

■ Due to his prior conviction Bagdonas suffers from a federal firearms disability. Federal law prohibits anyone

> who has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g). Bagdonas applied to the ATF for relief of his federal firearms disability under 18 U.S.C. § 925(c) which provides that:

> A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Secretary for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.

The Director of the ATF has been delegated the authority to approve or deny relief from federal firearms disability. *See* 27 C.F.R. § 178.144(d). Bagdonas now seeks judicial review of the ATF's September 27, 1988, denial of his application for relief under 18 U.S.C. § 925(c) which provides "for a judicial review of such denial." 18 U.S.C. § 925(c).

## C. *Judicial Review of ATF's Disability Relief Determinations*

■ The Administrative Procedure Act provides the standard of review for the judicial review of a discretionary denial of federal firearms disability relief pursuant to 18 U.S.C. § 925(c) and requires that the ATF's actions be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" before they will be set aside. 5 U.S.C. § 706(2)(A); *Bradley v. Bureau of Alcohol, Tobacco and Firearms*, 736 F.2d 1238, 1240 (8th Cir.1984); *Smith v. Brady*, 813 F.Supp. 1382, 1384 (E.D.Wis.1993); *Thompson v. Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms*, 533 F.Supp. 90, 92–93 (D.Utah 1981). Under this standard, the reviewing court must consider whether the agency decision was based upon a consideration of relevant factors and whether the agency has articulated a rational connection between the facts found and the decision made. *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), *reh'g denied*, 420 U.S. 956, 95 S.Ct. 1341, 43 L.Ed.2d 433 (1975). Although the court's "inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971), *overturned on other grounds, Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). The "arbitrary and capricious" standard "is a highly deferential one which presumes the agency's action to be valid . . . [and which] mandates judicial affirmance if a rational basis for the agency's decision is presented even though [the court] might otherwise disagree." *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C.Cir.1981) (citations omitted). Moreover, the burden of overcoming this presumption of validity is placed upon the party challenging the agency decision. *Id.* at 283 n. 28 (citations omitted).

■ The Administrative Procedure Act provides that when reviewing an agency decision under 5 U.S.C. § 706(2)(A) "the court

shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. Thus, when a court reviews an ATF decision under 18 U.S.C. § 925(c) the Court should consider the entire administrative record.[1] *Smith*, 813 F.Supp. at 1385; *Thompson*, 533 F.Supp. at 94–97. A copy of the Administrative Record has been filed with the Court.

### D. The ATF Did Not Act Arbitrarily and Capriciously in Denying Relief to Bagdonas

Prior to the denial of Bagdonas' application for relief, the ATF conducted interviews with Bagdonas, those persons Bagdonas had listed as character references, members of the community where Bagdonas lived, Bagdonas' current and former employers, and Bagdonas' former parole officers. *See* Def.'s Rule 12(m) Statement at ¶ 9. The ATF also checked Bagdonas' military records and law enforcement records. *Id.* At the close of its investigation the ATF determined that Bagdonas had not satisfied 18 U.S.C. § 925(c) which requires an applicant to demonstrate that, "the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 18 U.S.C. § 925(c). The ATF, therefore, denied Bagdonas' application for relief. *See* Def.'s Rule 12(m) Statement at ¶ 10.

The ATF based its denial on numerous factors revealed by its investigation. *See* Administrative Record at 98–107. Among the facts revealed by the ATF investigation were two firearms violations committed by Bagdonas. On April 22, 1977, Bagdonas vio-

lated an Ohio law by possessing a loaded .45 caliber pistol in the passenger compartment of his company truck. *See id.* at 99. Subsequently, Bagdonas was convicted of violating 26 U.S.C. § 5861 by selling two silencers and arranging for the sale of a machine gun to undercover ATF agents. *See id.* at 98–99. Bagdonas admitted that he knew this activity was illegal at the time he did it. *See id.* at 99. During the sale of these items an associate of Bagdonas pointed a machine gun at the undercover ATF agent and Bagdonas did not intercede or discourage this activity. *See id.* When contacted by investigators, this undercover ATF agent indicated that he would be leery of granting Bagdonas relief. *See id.*

During the course of ATF's interviews of Bagdonas' neighbors and employers most interviewees indicated that they had a positive opinion of Bagdonas and would not be opposed to restoration of firearm privileges to Bagdonas. *See id.* at 99–104. However, one neighbor, *id.* at 104, and one former employer, *id.* at 106, were opposed to granting relief to Bagdonas. The one opposing neighbor indicated that she was afraid of Bagdonas due to an incident in which Bagdonas had yelled at her when one of her guests parked in Bagdonas' parking space. *See id.* at 104. Bagdonas did not threaten her with harm in any way. *See id.* The lone opposing employer stated that he felt that Bagdonas had diverted company supplies and tools for personal benefit and had improperly handled money collected from customers. *See id.* at 106. This employer also alleged that Bagdonas had told him of a sawed-off shotgun that Bagdonas had previously possessed. *See id.*

The ATF's review of Bagdonas military records revealed that Bagdonas' discharge papers state in part that "Pvt Bago-

---

1. In disagreement with *Smith* and *Thompson*, the Ninth Circuit has held that when reviewing a denial of federal firearms disability relief "the scope of judicial review should be limited to an examination of the statement of the reasons upon which the Director made his decision to deny relief.... The statement of reasons need not include detailed findings of fact but must inform the court and the petitioner of the grounds of decision and the essential facts upon which the administrative decision was based." *Kitchens v. Dept. of the Treasury, Bureau of Alcohol, Tobacco*

*and Firearms*, 535 F.2d 1197, 1199–200 (9th Cir. 1976). However, this holding did not prevent the court from examining the entire administrative record, it merely allowed it to base its decision upon less than the full administrative record. *Id.* Moreover, the Supreme Court has stated that judicial review under 5 U.S.C. § 706(2)(A) of the Administrative Procedure Act requires examination of the entire administrative record. *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 419–20, 91 S.Ct. at 825–26.

nas (sic) is emotionally unstable and has been recommended for elimination by mental hygiene." *See id.* at 72. A counseling report prepared in connection with Bagdonas' discharge also stated that Bagdonas was unable to cope with his new environment. *See id.* at 74. Another military report noted that Bagdonas "has had thoughts of harming himself, though *at present* there is no danger." *See id.* at 73. Although the ATF should have properly characterized this information as being relevant to the state of Bagdonas' mental health, instead of his mental competency, it is the content and not the label attached to this information which determines whether the ATF has acted arbitrarily and capriciously by relying in part upon this information to deny relief to Bagdonas.

Based upon the foregoing information the ATF concluded that granting relief to Bagdonas "would be potentially detrimental to public safety and therefore contrary to the public interest." One ATF official disagreed with the denial, stating: "[i]t appears the only reason put forth to deny this [application] was because applicant wanted out of the Army when he was 22 years old. This is a well researched application, but the information is overwhelmingly positive." *See id.* at 108. However, the decision to deny Bagdonas' request for relief was not based solely upon the circumstances of his discharge from the military. It was premised upon the all of the factors cited in the Special Agent's Investigation Report and noted above. *See id.* at 98–107. See also *Lovell v. U.S. Dept. of the Treasury, Bureau of Alcohol, Tobacco and Firearms,* 867 F.Supp. 571, 572 (W.D.Mich. 1994), in which the court upheld an ATF denial of relief where an application was denied after it had been approved by the field office and the first two levels of review.

▪ Bagdonas asserts that "the ATF focused only on the minimal criticism of Mr. Bagdonas collected during its background investigation, rather than the overwhelming amount of positive information collected from Mr. Bagdonas's employers, neighbors, and law enforcement records." Pl.'s Mem. of Law in Resp. to Def.'s Mot. for Summ.J., and in Supp. of Pl.'s Cross–Mot. for Summ.J. at 15. The ATF did not place an irrational

emphasis upon the negative information revealed by their investigation. Simply because the ATF recites negative information when supporting its conclusion to deny relief does not mean that it has not given adequate consideration to the positive information also revealed. *See Lovell,* 867 F.Supp. at 572 ("Plaintiff incorrectly concludes that because a reviewing officer cited one fact in support of the officer's conclusion, which was contrary to a field officer's recommendation, he or she 'disregarded' all other facts. Instead, the reviewing officer viewed the facts through a different lens.") Bagdonas also argues that the military records should be discounted because they document events which occurred approximately 13 years prior to the ATF's denial of relief. *See* Pl.'s Mem. of Law at 2. While the age of these records reduces, it does not eliminate, their relevancy. Moreover, the ATF did not rely solely upon these records when denying Bagdonas relief. *See* Administrative Record at 107. Bagdonas also argues that because ATF characterized the information contained in of these reports as reflecting upon Bagdonas' "mental competency," *see* Pl.'s Mem. of Law at 3–4, instead of his "mental health" the ATF's decision is without foundation. However, the ATF's decision was based on the content of these reports not the label affixed thereto. *See* Administrative Record at 105–06.

▪ Bagdonas, in support of his cross-motion, has submitted an affidavit which attempts to explain and downplay his discharge from the army, Aff. of Joseph Bagdonas at ¶ 1–3, to distance himself from the actions of his associate who pointed a machine gun at an undercover ATF agent, *id.* at ¶ 6, and state that the sawed-off shotgun he previously owned was purchased for home protection and was of legal length. *Id.* at ¶ 7. This Court has the discretion to consider such additional evidence under 18 U.S.C. § 925(c), which states: "[t]he court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice." After consideration of these allegedly mitigating factors, this Court concludes that admission of this affidavit would not

render the ATF's denial of relief arbitrary and capricious.

 Bagdonas has submitted arguments and an affidavit which articulate a rational interpretation of the administrative record. This interpretation supports the removal of Bagdonas' federal firearms disability. However, the ATF has also articulated a rational basis for concluding that the evidence revealed by investigation establishes that granting relief to Mr. Bagdonas would be potentially detrimental to the public safety. Further, the ATF has demonstrated a rational connection between the denial of Bagdonas' application for relief and the evidence of Bagdonas' prior emotional instability, Bagdonas' criminal history, the circumstances of Bagdonas' violation of federal firearms law and the willful nature of Bagdonas' violation of federal firearms law. *See* Administrative Record at 98–107. Under these circumstances the ATF's denial of relief must be affirmed. *See Environmental · Defense Fund, Inc.,* 657 F.2d at 283 ("judicial affirmance [is mandated] if a rational basis for the agency's decision is presented") (citations omitted).

## CONCLUSION

The undisputed material facts demonstrate that the ATF had a rational basis for its denial of Bagdonas' application for relief of federal firearms disability. Therefore, the ATF's motion for summary judgment is granted and Bagdonas' cross-motion for summary judgment is denied. This case is terminated. Each party is to bear their own costs.